# EXHIBIT A

**REUTERS**

**» Print**

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to colleagues, clients or customers, use the Reprints tool at the top of any article or visit: www.reutersreprints.com.

# Analysis: U.S. criminal inquiry puts much at risk for ZTE

Sun, Jul 15 2012

By David Ingram

WASHINGTON (Reuters) - ZTE Corp, the world's fifth-biggest telecommunications equipment maker, could face steep fines and restrictions on its U.S. operations if it is found to have illegally sold U.S. computer products to Iran.



The FBI has opened a criminal investigation into the Chinese company's sale of banned equipment, according to an FBI affidavit. Reuters reported in March that ZTE had a $120 million contract in 2010 with Iran's largest telecom firm, including supplying U.S. computer equipment. Reuters later reported that ZTE had agreed last year to ship millions of dollars worth of additional embargoed U.S. computer equipment to a unit of the consortium that controls the Iranian telecom.

The U.S. Commerce Department is also investigating.

The law authorizing U.S. sanctions against Iran allows for a civil penalty up to twice the value of a transaction, which in ZTE's case would translate to $240 million or more.

Individuals, such as company employees, convicted under the law can be sentenced to 20 years in prison, and companies in the most extreme cases can be cut off entirely from commerce with the United States, legal experts said on Friday.

The FBI investigation will also look at alleged attempts by ZTE to cover up its sales to Iran and obstruct the Department of Commerce probe, the FBI affidavit indicates. Any finding of obstruction of justice carries its own wide-ranging and potentially heavy penalties under U.S. law.

ZTE's China-based spokesman David Shu said in response to questions about the investigations: "We've been actively engaging relevant U.S. government departments and we're cooperating with them on various matters."

He said that the company's U.S. subsidiary's main business is to deliver mobile devices to the U.S. market. He denied it is involved in products for any other market, such as Iran, and said the company is confident in the U.S. subsidiary's prospects.

"ZTE is wholly committed to transparency and will cooperate in addressing any questions regarding our business," Shu added.

He declined to comment when asked about allegations of a cover-up.

The U.S. Justice Department has declined comment.

The FBI investigation was first reported on Thursday by the Smoking Gun website.

The potential penalties are part of an extensive sanctions regime that U.S. trade officials and prosecutors have increasingly brought to bear against corporations, even those that are outside U.S. jurisdiction.

"It's not surprising, though often wrong, to hear companies say, 'How can that law apply to me? I'm not a U.S. company,'" said J. Scott Maberry, a lawyer who specializes in helping companies comply. He is not involved in ZTE's case and was speaking generally.

The penalties fall under the International Emergency Economic Powers Act of 1977. Congress, concerned about U.S. technology heading to countries such as Iran, raised the penalties in 2007.

Also in 2007, the U.S. Justice Department created a new position to coordinate cases across federal agencies.

PREVIOUS PENALTIES

Export violations "have been deemed to be priorities of U.S. policy, and so enforcement capabilities of the agencies have been beefed up. They're looking at and working on more cases," said Edward Rubinoff, another lawyer who advises companies but is not involved in ZTE's case.

On Friday, in a separate criminal case, the Justice Department disclosed that a grand jury had indicted two men under the same law on allegations they sought U.S. materials to enrich uranium in Iran.

Often the transactions in question are not for weapons but products with a civilian purpose. Reuters reported in March and April that ZTE had signed contracts to ship millions of dollars in hardware and software to an Iranian telecom carrier without U.S. approval.

Case 1:15-cv-00986-LAK    Document 127-1    Filed 08/05/15    Page 3 of 3

An array of corporations and individuals have found themselves subject to penalties.

Last month, Amsterdam-based ING Groep NV agreed to pay $619 million for conspiring to violate U.S. sanctions on Iran and Cuba by moving more than 20,000 transactions through the U.S. financial system. Each transaction counted as a violation, raising the company's exposure to penalties.

In a case with some parallels to ZTE's, the U.S. government accused Allied Telesis Labs Inc in 2008 of trying to evade sanctions for a $95 million telecommunications contract in Iran. The company pleaded guilty in federal court, paid a $500,000 criminal fine and was sentenced to probation for two years.

It can be difficult for the U.S. government to claim jurisdiction over foreign companies, but authorities have some leverage.

Arrest warrants for individuals would prevent them from traveling to the United States or to countries where they would run the risk of extradition.

An indictment of a foreign company's U.S. unit would restrict or end that unit's operations.

Perhaps most importantly, a company could find itself on one of several lists that tie up its ability to trade with the United States. Those on the Specially Designated Nationals List, for example, are completely cut off.

"U.S. companies won't do business with you. U.S. banks won't do business with you," said Washington trade lawyer Eric McClafferty. "That's kind of a club that the agencies use to get non-U.S. companies to pay U.S. civil penalties."

(Additional reporting by Steve Stecklow and Chyen Yee Lee; Editing by Howard Goller and Martin Howell)

© Thomson Reuters 2011. All rights reserved. Users may download and print extracts of content from this website for their own personal and non-commercial use only. Republication or redistribution of Thomson Reuters content, including by framing or similar means, is expressly prohibited without the prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and disclosure of relevant interests.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to colleagues, clients or customers, use the Reprints tool at the top of any article or visit: www.reutersreprints.com.